No. 3736

Second Circuit

PEOPLES BANK v. FIRST NAT'L BANK ET AL.

(January 31, 1930. Opinion and Decree.)

H. W. Ayres of Jonesboro, attorney for plaintiff, appellant.

Moss and Moss of Winnfield, attorneys for defendant, appellee.

ODOM, J. The First National Bank of Winnfield, a judgment creditor of W. C. Anders, seized under a writ of fi. fa. nine and one-half tons of cotton seed as the property of Anders. The plaintiff bank, through its cashier, C. M. Wommack, made affidavit that it was the owner of the seized property and demanded that the sheriff release it. Whereupon the sheriff called upon the seizing creditor for an indemnity bond, as provided in Act 37 of 1882, p. 50 (R. S. N. 3579.), which bond was promptly furnished and the property was sold by the sheriff in due course, and the proceeds turned over to the seizing creditor.

The plaintiff bank then brought the present suit against the First National Bank of Winnfield, the seizing creditor, for said proceeds, alleging that it, and not Anders, was the owner of the cotton seed. The defendant bank answered denying that plaintiff was the owner of the seed, but alleged that the property belonged to its debtor, Anders.

The only question involved is that of the ownership of the cotton seed. The lower court found that the seed belonged to Anders and not to plaintiff, and rejected its demands, and it appealed.

The judgment of the lower court is amply supported by the testimony. The seed was purchased by Anders and by him stored in a warehouse at Dodson. In the purchase of the seed, Anders drew his checks on the plaintiff bank, which were paid. Some of the checks were signed by him in his personal capacity. He signed his son's name to others, by him, as agent. His son was then in Shreveport at work. Asked why he drew the checks in his son's name, Mr. Anders said that

he had been adjudged a bankrupt and was advised that he could transact no business in his own name, and that it would be necessary for him to use his son's name. Mr. Anders signed and left with Mr. Pyburn, a merchant at Dodson, a number of blank checks with instructions for Pyburn to purchase seed at such price as Anders named and to fill out the checks as to the name and amount in favor of the vendors of the seed. Mr. Pyburn understood that he was purchasing the seed for Anders.

Mr. Wommack, cashier of the plaintiff bank, testified that Anders was buying seed for the bank, that Anders was the bank's agent, but admitted that the checks given in payment were drawn by Anders on his bank and were paid, which would indicate that they were drawn against Anders' account. No explanation is made as to the bank's rather strange and unusual departure from regular banking business to engage in that of buying cotton seed, nor why, if it had done so, Anders was not instructed to draft on the bank for funds with which to pay for the seed, instead of paying for them with his own checks. Anders, being a bankrupt, could not, for a portion of the time, use his own name and was driven to the necessity of using his son's name. Under the circumstances, the natural and perfectly safe method for both the bank and Anders, if Anders had been the bank's agent, would have been for Anders to draw drafts on the bank, instead of his checks in his own name and that of his son.

Aside from this, there is another reason why we cannot hold that Anders bought the seed for the bank. When the seed was seized Mr. Wommack, cashier of the plaintiff bank, made affidavit that the bank owned the seed. The statute is mandatory that such affidavit must set out specifically "all the facts on which his title or claim of ownership is based." We quote from the affidavit as follows:

"That the Peoples Bank of which he is Cashier and is authorized to make this affidavit for which he appears herein, is the true, lawful and real bona fide owner of said cotton seed, having acquired said seed from W. C. Anders when the cotton was ginned and having paid a valuable consideration in cash for same."

Mr. Wommack was called as a witness for plaintiff and testified, when asked how the bank acquired the seed, that the bank had purchased them, not from Anders, but through Anders as its agent. His testimony as a witness is wholly inconsistent with his affidavit.

Counsel for plaintiff-appellant, has made no appearance in this court to argue the case, nor has he filed brief, and we are therefore deprived of his views. Our reading of the record has convinced us, however, that the judge of the lower court made no error, and his judgment is accordingly affirmed with all costs in both courts.